UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

STEPHEN GOODWIN,                )
                                )
        Petitioner,              )     Case No. 12-CV-2154
                                )
    v.                          )
                                )
RANDY PFISTER, Warden,           )
                                )
        Respondent.              )
                                )

## OPINION

This case is before the court on Petitioner Goodwin's petition for a writ of habeas corpus under 28 U.S.C. § 2254. (#1). The court has reviewed Petitioner's petition (#1), the Respondent's Answer (#12), Petitioner's Reply (#14), and the pertinent portions of the state court record. Following this careful review, the Petition (#1) is DENIED.

### Background

The state appellate court gave the following facts on direct appeal:

> On February 6, 2006, the jury trial commenced on five charges (the State was granted a motion just before trial to [*nolle prosequi*] the burglary charge). Kevin Howard testified, as is relevant to this appeal, that on April 3, 2005, he and his 11-month-old daughter, [C.H.], were sitting in a minivan belonging to Kevin and his wife Dorian, as it was idling in the driveway at 2822 Cardinal Drive. Kevin was in the driver's seat and [C.H.] was in a child's car seat, facing forward, belted to the seat directly behind the driver's seat. The windows behind the front doors of the van were tinted.
> Kevin saw a man, whom he identified as defendant, being chased by a police officer. Defendant ran up along side the van, crossed in front of it, then ran around the house. Kevin got out to see what was happening. He left his door open. He headed back to the van, but saw defendant again. This time, defendant jumped into the driver's seat of the minivan, shut the door, and locked the doors. The

evidence at trial conflicted on whether the driver's window of the van was open and whether, as defendant drove off in the van, Kevin yelled that there was a child in the car or "stop, get out of my car."

The evidence at trial indicated that defendant drove away, accelerating quickly, with the child still strapped in her car seat in the car. Kevin and Dorian chased on foot briefly, with Dorian screaming that there was a baby in the car. Decatur police officers Nathan Binkley and Christopher Copeland, who were attempting to take defendant in on the outstanding warrant, ran back to their squad car. Officer Chad Shull, who was also on the scene, gave chase in his patrol car, and Kevin and his sister-in-law got in another vehicle and also chased defendant.

After driving a short way, Kevin and his sister-in-law asked some passersby whether they had seen the van. The passersby said they had seen the van and pointed Kevin and his sister-in-law in the direction they had seen it travel. Kevin spotted the van, which had no police cars behind it. Kevin and his sister-in-law turned around and followed the van, but they then lost sight of it.

Officers Nathan Binkley and Christopher Copeland also attempted to locate the van. They did find it, following it briefly before their commander called off the pursuit. Officers Chad Shull and Chad Larner pursued the defendant in the minivan for a longer time. During this time, defendant drove at speeds of 75 to nearly 100 miles per hour, ran red lights, crossed a median, and drove in oncoming traffic lanes to drive around stopped traffic. The pursuit was terminated by Sergeant Squires (first name not in evidence). Officer Chad Shull and Chad Larner slowed and lost sight of the van, but they continued driving.

Shortly after that, Officer Chad Shull saw people pointing toward an apartment complex at the next intersection. Officer Chad Shull saw the van on the curb at that intersection. Officers Chad Shull and Chad Larner arrived at the van about the same time and found that Kevin had arrived before any police officers. Kevin had not seen the van since the first time he lost sight of it. Officer Chad Larner estimated that the van was out of his sight for about two minutes. The record indicates that Officer Chad Shull also lost sight of the van. Immediately after he arrived, Kevin removed [C.H.] from the van. [C.H.] was crying, and both parents noted that her face was red and splotchy, which is how it looked when she has been crying.

At trial, defendant testified in his own defense. He admitted that he knew there was a warrant for his arrest, and he did not want to be taken in on it. Defendant testified he was going to hide in the van but decided to drive away when one of the officers tried to spray him with mace. He said the windows were closed, and he heard a man yell at him to get out of the van, but did not hear anything about a child in the van. He said he did not look behind him, music was playing in the van, and he never heard [C.H.]. He also said that he spent a considerable amount of the time he was running from police talking to his girlfriend on Kevin's cell phone.

The jury found defendant guilty on all charges. On March 22, 2006, the trial court vacated the (nonaggravated) possession-of-a-converted-vehicle conviction, and sentenced defendant to concurrent sentences of 7 years' imprisonment for escape, 30 years' imprisonment for kidnaping, 15 years' imprisonment for

> aggravated possession of a converted vehicle, and 3 years' imprisonment for eluding, all running consecutive to defendant's March 8, 2005, sentence for theft over $300 in Macon County case No. 04–CF–752.

*People v. Goodwin*, 888 N.E.2d 140, 144 (Ill. Ct. App. 4th Dist. 2008).[1] The appellate court on postconviction review noted that the State used peremptory challenges to dismiss five jurors during jury selection. *People v. Goodwin*, 976 N.E.2d 17, 18 (Ill. Ct. App. 4th Dist. 2012).

*Direct appeal*

On appeal, Petitioner argued, among other things, that the evidence for his aggravated kidnapping conviction was insufficient because C.H. was not subjected to "secret confinement" since everyone knew C.H. was in the van and that C.H. could be observed by a person looking through the van's window. *Id*. at 146. The appellate court affirmed the conviction, holding that under Illinois state law, "one person holding another in a car on the public highways constitutes secret confinement." *Id.* at 147. That court then held that "secret confinement" was satisfied simply because Petitioner attempted to elude detection and that the police and C.H.'s parents did lose visual contact for "only a short time." *Id*.  The appellate court then affirmed the trial court's judgment. *Id*. at 148. Petitioner filed a petition for leave to appeal (PLA) in Illinois Supreme Court, again raising the insufficiency of the evidence argument. On March 30, 2011, the Illinois Supreme Court denied the PLA. *People v. Goodwin*, 897 N.E.2d 258, No. 106440 (Ill. 2008).

*Postconviction review*

In his postconviction petition, Petitioner argued that 1) trial counsel was ineffective for failing to object to the prosecutor's use of peremptory challenges to excuse three potential jurors

---

[1] Although the Illinois legislature prefers the spelling "kidnaping", 720 ILCS 5/10-2, this opinion adopts the spelling used by the U.S. Congress, 18 U.S.C. § 1201.

and 2) appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on same. Regarding the failure to raise a *Batson* challenge, the state appellate court stated:

> Shortly after the trial court sentenced defendant, defendant's trial counsel filed a motion for a new trial, arguing, in pertinent part, that he "was not tried by a jury of his peers in that the State preemptively challenged two African-American jurors and one Asian-American juror, insuring an all white jury." In rejecting defendant's claim, the court stated the following:
>
>> "The fact that African-American jurors were excused by peremptory challenges is something that the Court has to be aware of. Any party that believes that a juror is being dismissed because of race can raise that issue. The parties can knowingly waive that right, but it can always later be challenged on the basis of ineffective assistance of counsel. But this Court is always vigilant to that issue. The Court didn't see any effort to remove jurors because of race in this case. Even though it is not the Court's responsibility to raise this without it being raised by the Defendant or the State, if this Court had thought that any juror was being excused because of race, the Court would have stepped in. There is just no evidence of that in the record. The fact that African- American jurors may have been excused is not a reason for a new trial. The law doesn't guarantee anyone a particular racial makeup on a jury. But the Defendant is guaranteed a fair and impartial jury and there is nothing in this record to indicate that he did not receive a trial and a verdict from a fair and impartial jury."

*People v. Goodwin*, 976 N.E.2d 17, 19-20, (Ill. Ct. App. 4th Dist. 2012), *reh'g denied* (Feb. 28, 2012), *appeal denied,* 968 N.E.2d 1068 (Ill. 2012) (editing marks and internal quotations marks omitted). The trial court on postconviction review therefore denied Petitioner's request for relief. *Id*. at 23. On appellate review of the denial of the postconviction petition, Petitioner argued that trial counsel was ineffective for failing to *preserve* the *Batson* challenge. The appellate court noted that Petitioner had argued that trial counsel was ineffective for failing "to object to the State's dismissing the only two African–American and Asian–American veniremembers based solely on race." *Id.* at 22. Because Petitioner "failed to provide any relevant circumstances to substantiate his claim", his "petition for postconviction relief [was] inadequate in that it merely contained a vague, unsubstantiated, and conclusory allegation of a *Batson* violation." *Id*. at 23.

That court noted that "it is settled that a *Batson* case cannot be substantiated merely by the numbers of black veniremembers stricken by the State but instead, by establishment of a *prima facie* case of discrimination based on a consideration of all relevant circumstances." *Id*. The appellate court then affirmed the trial court's denial of the petition.[2] *Id*. The Illinois Supreme Court denied a PLA. *People v. Goodwin*, 968 N.E.2d 1068 (Ill. 2012). On June 12, 2012, Petitioner filed the present *pro se* Petition for Writ of Habeas Corpus (#1).

## Analysis

Because Petitioner filed his petition after April 24, 1996, his habeas petition is reviewed pursuant to the AEDPA. *Lindh v. Murphy,* 521 U.S. 320.336 (1997); *Rodriguez v. Scillia,* 193 F.3d 913, 916 (7th Cir. 1999). Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, habeas corpus relief may only be granted if Petitioner meets his burden to show that the state court's decision was either "contrary to" or involved an "unreasonable application of" United States Supreme Court precedent, or resulted from an unreasonable determination of the facts. *Weeks v. Angelone,* 528 U.S. 225, 237 (2000). Further, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and

---

[2] Curiously, the appellate court does not appears to have addressed Petitioner's second claim alleging appellate counsel's ineffective assistance, but given that that claim is rooted entirely in trial counsel's alleged ineffective assistance, it would not be necessary.

convincing evidence." 28 U.S.C. § 2254(e)(1). This "highly deferential standard" imposed by the AEDPA "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotto,* 537 U.S. 19, 24 (2002).

In the present *pro se* Petition, Petitioner makes three claims: 1) there was insufficient evidence at trial to convict him of aggravated kidnapping due to the State's failure to demonstrate that he had "secretly confined" C.H.; 2) trial counsel did not provide peffective assistance for failing to preserve any *Batson* claim he might have had (and that the state courts on postconviction review incorrectly held that trial counsel was not ineffective); and 3) appellate counsel provided ineffective assistance for failing to raise trial counsel's ineffectiveness by failing to preserve a *Batson* challenge.

*Sufficiency of the evidence*

In his first ground, Petitioner raises the same arguments that he raised in state court on direct appeal and postconviction review. He argues that although "the State charged in Count IV that [he] knowingly and secretly confined [C.H.]", "the State failed to establish that the confinement was secret." (#8 p. 5). Petitioner argues that "[t]he State's evidence showed that everyone knew that [C.H.] was in the car. Further, the State's evidence was that a person could see in the car window and see [C.H.]. It was therefore, no secret, and it was never question [sic] as to where [C.H.] was.… [Petitioner] never removed the van from the public's awareness and [C.H.] could be seen through the window." (#8 p. 8-9).

But Petitioner argues for a specific interpretation of state law; that is, the definition of "secret confinement" in the context of the Illinois kidnapping statute. Although Petitioner presents the issue as a question of fact: *i.e.*, Was C.H. held in secret? his argument overlooks a

pure question of law: Does the "secret confinement" element require that the kidnapped individual be taken out of public awareness for a significant or substantial period of time? A pure question of state law exists when the evidence is sufficient to determine whether the state court was correct in its interpretation of the statute. *Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991). There is sufficient factual basis to categorize the question as one of state statutory interpretation. Further, the state appellate court on postconviction review also considered this question to be one of state law:

> Here, the issue is whether the undisputed facts of the case constitute "secret confinement" under section 10–1(a) of the Criminal Code of 1961 (720 ILCS 5/10–1(a) (West 2004)). The question is one of law and this court will review the finding of "secret confinement" de *novo. Lamborn,* 185 Ill.2d at 590, 236 Ill.Dec. 764, 708 N.E.2d at 354; *Smith,* 191 Ill.2d at 411, 247 Ill.Dec. 458, 732 N.E.2d at 514
> 
> A kidnaping occurs when a person knowingly and secretly confines another person against his will. 720 ILCS 5/10–1(a)(1) (West 2004). Confinement of a child under the age of 13 is considered "against his will" if done without the consent of the parents or legal guardian, and, where the victim is under 13, the crime also become aggravated kidnaping. 720 ILCS 5/10–1(b), 10–2(a)(2) (West 2004).
> 
> The precedent in Illinois is clear and consistent: one person holding another in a car on the public highways constitutes secret confinement. *People v. Bishop,* 1 Ill.2d 60, 64, 114 N.E.2d 566, 568 (1953); *People v. Hamil,* 20 Ill.App.3d 901, 908, 314 N.E.2d 251, 256 (1974).

*Goodwin*, 888 N.E.2d at 146-47. Thus, this argument falls squarely within the confines of § 2254(d)(1). Given that this is a pure question of state law, this court does not have subject-matter jurisdiction to address it. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 63. "[E]rrors of state law in and of themselves are not cognizable on habeas review." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). "[W]hether the state court correctly understands the law is a question beyond the reach of

a federal court on collateral attack." *Bates*, 934 F.2d at 103. Accordingly, this issue is noncognizable. As for the "unreasonable determination" prong in § 2254(d)(2), Petitioner does not challenge the actual *facts* of his kidnapping conviction and therefore cannot rebut the presumption that the State court's factual findings were correct. 28 U.S.C. § 2254(e)(1).

*Ineffective assistance of trial counsel to preserve* Batson *challenge*

A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under § 2254(d)'s "unreasonable application" clause, a federal habeas court may not issue the writ because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly. *Bell v. Cone,* 535 U.S. 685, 698-699 (2002). "Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002). The bar for establishing that a state court's application of the *Strickland* standard was "unreasonable" is high. *Murrell v. Frank,* 332 F.3d 1102, 1111 (7th Cir. 2003). "Only a 'clear error' in applying *Strickland's* standard would support a writ of habeas corpus." *Daniels v. Knight*, 476 F.3d 426, 435 (7th Cir. 2007).

The state appellate court on postconviction review correctly identified and described *Strickland* as the standard controlling Petitioner's ineffective assistance claim. *Goodwin*, 976 N.E.2d at 21. That court also correctly identified and described *Batson* as the standard controlling Petitioner's underlying claim that the prosecutor's peremptory challenges were racially motivated. *Id*. at 22.

To establish a *prima facie Batson* claim, Petitioner must first show "that the totality of the

relevant facts gives rise to an inference of discriminatory purpose." *Batson v. Kentucky*, 476 U.S. 79, 94 1986). Two examples of relevant facts that might give rise to such a discriminatory purpose would be a pattern of strikes against black jurors or the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges. *Id*. at 97. Additionally, the petitioner has the initial burden of proof. Although this burden is light, Petitioner must establish the inference "before requiring prosecutors to engage in the difficult task of articulating their instinctive reasons for peremptorily striking a juror." *Bennett v. Gaetz*, 592 F.3d 786, 791 (7th Cir. 2010).

      In the present Petition, Petitioner asserts that

> [d]uring voir dire, the parties quickly accepted ten of the first fourteen members of the jury pool. No objection was made by defense counsel. Ten more prospective jurors were examined and the State excused one more juror before the remainder of the third panel was seated. In all, 24 members of the venire were examined, 17 members of the venire were considered, five were excused by the State, and seven remained unselected. No discussion was had regarding the racial make-up of either the jury pool, generally, or the selected jury, specifically. Defense counsel did not object to any of the State's peremptory objections.
>     Following the guilty verdict, however, defense counsel filed a motion for new trial [in] which it claimed that defendant, an African-American, "was not tried by a jury of his peers in that the State preemptive [sic] challenged two African-American jurors and one Asian-American juror insuring [sic] an all white [sic] jury.

(#1 p. 9). Petitioner argues that "[a]ccording to the law a *Batson* challenge is to be made prior to the jury being sworn. Counsel in this instant matter appeared not to know the law." (#1 p.4). Petitioner appears to be arguing that because trial counsel filed a motion for new trial based on a *Batson* challenge, but did not make that objection at the appropriate time, counsel provided ineffective assistance. Petitioner misunderstands *Strickland* and *Batson*.

    First, Petitioner has the burden to provide a minimal amount of fact giving rise to an inference of discriminatory purpose. The three-step process for evaluating claims that a

- 9 -

prosecutor has used peremptory challenges in an unconstitutional manner is as follows:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York*, 500 U.S. 352, 358-59 (1991). The only fact that Petitioner puts forth is that the prosecutor struck all three non-white jurors examined before agreeing on a jury. However, "official action will not be held unconstitutional solely because it results in a racially disproportionate impact…. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). "To establish a prima facie case of purposeful discrimination under *Batson*, [a defendant] must do more than merely point to the fact that the government excluded an African-American venireperson by using a peremptory challenge." *United States v. Cooke*, 110 F.3d 1288, 1301 (7th Cir. 1997).

Certainly, "a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face." *Vill. of Arlington Heights*, 429 U.S. at 266. But without a stark pattern, "impact alone is not determinative, and the Court must look to other evidence." *Id*. In *Bennett*, a petitioner argued that "the prosecution used two of its four peremptories, or 50%, against African-Americans, who comprised just five of the twenty-eight venire members, or 18%." *Bennett v. Gaetz*, 592 F.3d 786, 791 (7th Cir. 2010). There, the Seventh Circuit held that "it is difficult to draw significance from this disparity, given the relatively small numbers of African-American prospective jurors and peremptory challenges in this case." *Id*. That court then affirmed the district court's denial of the petitioner's habeas petition. *Id*. at 792. Similarly, Petitioner only asserts that all three

minority venirepersons were struck from a pool of 24. Furthermore, the State did strike a total of five venirepersons; thus, logically, two of the jurors struck from the panel were not minorities—that is to say, white. Finally, in a county where the percentage of white residents is 79.5% as of the last national census estimate in 2012, no supportable conclusion may be drawn merely from the observation that a jury of 12 jurors plus two alternates is composed solely of non-white jurors.[3] There is neither a "clear pattern, unexplainable on grounds other than race", nor does Petitioner provide any further facts. Thus, because Petitioner failed to provide enough facts to shift the burden of proof to the State, the state appellate court's decision was neither contrary to nor an unreasonable application of Supreme Court precedent when it held that this fact alone was insufficient to establish a prima facie *Batson* violation.

Regarding the ineffective assistance claim: For reasons discussed in the previous section, a *Batson* objection would have been meritless, and the failure to raise a meritless claim does not constitute ineffective assistance of counsel. *Liss v. United States*, 915 F.2d 287, 291 (7th Cir. 1990). Had trial counsel had made a *Batson* challenge and preserved it before the jury was impaneled, he would not have been able to prevail. Similarly, appellate counsel was not ineffective for failing to argue that trial counsel was ineffective. Thus, the state court's decision did not apply *Strickland* to the facts of Petitioner's case in an objectively unreasonable manner. Accordingly, Petitioner cannot prevail on this claim either.

**Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability (CoA) when it enters a

---

[3] United States Census Bureau, State & County QuickFacts, Macon County, Petitioner was tried and convicted in Decatur, Macon County, Illinois. http://quickfacts.census.gov/qfd/states/17/17115.html.

final judgment adverse to a habeas petitioner. A petitioner may appeal a district court's denial of a writ of habeas corpus only when the petitioner has been issued a certificate of appealability. 28 U.S.C. § 2253(c)(1). To obtain a CoA, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Additionally, when a "district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This court concludes that Petitioner has not made a substantial showing of the denial of any constitutional right and that jurists of reason would not find the accuracy of the court's procedural ruling regarding the noncognizability of state law interpretation to be debatable. This court also concludes that Petitioner has not made a substantial showing of the denial of his constitutional right to effective assistance of counsel. Therefore, a COA is DENIED.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. §2254 (#1) is DENIED.

(2) A certificate of appealability is DENIED.

(3) This case is terminated.

ENTERED this 16th day of July 2013

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
SENIOR U. S. DISTRICT JUDGE